609 So.2d 435 (1992)
Buddy Wayne MARTIN
v.
STATE of Mississippi.
No. 90-KA-414.
Supreme Court of Mississippi.
November 5, 1992.
Rehearing Denied December 17, 1992.
*436 H.R. Garner, Garner & Garner, Hernando, for appellant.
Michael C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and BANKS, JJ.
BANKS, Justice, for the Court:
The present matter involves a near fatal attraction. Enamored of a married woman, the accused stands convicted of conspiring to murder the woman's husband and of the aggravated assault committed against the husband in an attempt to accomplish the objective of the scheme. The accused complains that his conviction is a result of the ineffectiveness of his lawyer and the court's refusal of a circumstantial evidence instruction. We find no merit in his contentions and affirm.

I
This case is on appeal from the Circuit Court of DeSoto County, where Buddy Wayne Martin (Martin) was convicted by a jury on February 21, 1990, of the crimes of conspiracy to commit capital murder and aggravated assault which had been lodged against him in a two-count indictment. He was sentenced to serve a term of twenty years on the conspiracy conviction and a consecutive twenty-year term, with five years suspended pending good behavior, on the aggravated assault conviction.
Martin was indicted along with Elizabeth Prewett and Robert Cole for the crimes. On the day set for trial, Prewett entered a guilty plea pursuant to a plea bargain agreement and received a twenty-year suspended sentence. Cole was at large at the time of trial, having apparently fled Memphis to avoid prosecution for an unrelated murder. Martin appealed to this Court for review of the following issues:
I. Whether Martin was denied his right to effective counsel at the trial in violation of his sixth amendment rights under the United States Constitution?
II. Whether the lower court erred in refusing to grant Martin a circumstantial evidence instruction?

*437 II
Prewett testified that she met Martin in August of 1987 at a place called Movies and Models in Memphis, TN, where Prewett worked as a hostess/prostitute. According to Prewett, Martin called himself "Sam" and she called herself "Shareefva." As was customary in Movies and Models, Sam chose "Shareefva" to watch one of the movies with him. She took "Sam" to a movie room, which was equipped with a screen and a bed. There, she and "Sam" engaged in sex. They spent about fifteen to twenty minutes together and Prewett indicates that she got a good look at him. She identified Martin as "Sam."
Prewett gave Martin the telephone number at Movies and Models. He called her a couple of times at work and at her home. She received a letter at Movies and Models, addressed to her as Shareefva postmarked August 5, 1987. This letter related a plan to deposit money into an account for Prewett after which "you will be expected to complete (as we agree upon) the work." Prewett relates that at that time they had not discussed the work to be done. Later, she received what appeared to be savings account bank deposit slips for $20,000 deposited to an account in her name.[1]
Martin then called Prewett and told her that the target, Ray Robinson, had "raped a four-year old girl and was messing around with his wife and he stated that he wanted me to kill him." Prewett claims that she said that she didn't kill people whereupon, her boyfriend, Robert Cole, who had been listening with his ear to the phone, took the phone and said "he'd do it" to Martin. Prewett left the room without hearing any further conversation. She had no other conversations with Martin after that, but she did answer the phone on some occasions when he called for Cole. Cole related to her that he intended to stalk Robinson in the parking lot of the Kroger store, where Robinson worked.
Prewett went with Cole to the bus station, where he retrieved a package bearing block printing, similar to that on the envelopes that she had received from "Sam." That package contained a bicycle sprocket in which a .22 caliber revolver was hidden. Cole indicated that he would use the weapon to kill Robinson. This occurred three or four months prior to the attempt to kill Robinson. For some time prior to that incident, which occurred in February 1988, Cole indicated that he was following Robinson around.
On the night of the shooting, Cole reported to Prewett that he had indeed shot Robinson in the Kroger parking lot, after approaching him and calling him by name. Suspecting a robbery or other foul deed, Robinson fled and was shot in the back. Later Cole was informed by "Sam" that Robinson did not die and advised that he would receive a .38 caliber revolver and ten thousand more dollars to get the job done right. Later, Prewett discovered a letter in a drawer in Cole's night stand in print similar to that she received from "Sam" addressed to Cole and stating the following:
We would like to see Elizabeth make some contact with our friend. This may be a long and drawn out process so we need to begin.
We understand the risk you have placed yourself in. We are afraid we might lose contact with you if you take an extended vacation. Please be patient with us. We well (sic) try to send more expenses as needed. In the end you and I will be a richer men. (sic)
The gear we spoke of the other night is on it's way to you. This is 38 pcs. instead of the 22 pcs. we sent before. It will come to you in the same manner as before. I'll try to contact you a week from this Friday.
Prewett also discovered a .38 caliber revolver and got involved in an altercation with Cole over the weapon. The police were called, and because Cole was on parole, Edward Cole, Cole's father with whom Cole and Prewett were living, claimed the weapon as his own. Edward testified at trial that he had never seen the weapon before that night.
*438 In August 1988, Prewett and Cole went to Las Vegas. Prewett returned without Cole, and shortly thereafter gave a statement to the police implicating Cole in the Robinson shooting. In December 1988, Mrs. Robinson gave a statement concerning her affair with Martin and supplied a picture of Martin which Prewett identified as "Sam".
In addition to Prewett's testimony, the state adduced fingerprint evidence showing Martin's prints on the letters outlining the plan and a comparison of the printer at Martin's place of employment with that of the print on the letters indicating that the style was of the same type. The postmark on the envelope was from Colt, Arkansas, the place of Martin's employment. There was other evidence, but it should suffice to say, that the proof of Martin's guilt was such that he makes no claim that the verdict was against the weight of the evidence.

III
Martin's claim that he received ineffective assistance of counsel is grounded in three supposed errors made by his lawyer. It is Martin's contention that his right to effective assistance of legal counsel was denied because his lawyer allowed an envelope to be introduced at trial which was not reproduced in copies of items of state's evidence submitted pursuant to Rule 4.06 of the Uniform Criminal Rules of Circuit Court and which was not inspected by trial counsel prior to trial. Martin also states that his lawyer did not object to testimony made by co-conspirator Elizabeth Prewett regarding statements that Robert Cole allegedly made to her, at a time after she supposedly refused to become involved in an alleged scheme to kill Ray Robinson. Finally, he contends that his lawyer should have requested an accomplice instruction regarding Elizabeth Prewett.
Whether any failings of counsel singly or in combination rose to the level of constitutional error depends on whether the failure meets the two-prong test set forth by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) There, the United States Supreme Court announced the standard for determining ineffectiveness of counsel. First, a defendant must prove that his attorney was not functioning as the counsel guaranteed by the sixth amendment. Second, that the lawyer's errors were of such a serious magnitude as to deprive the defendant of a fair trial because of a reasonable probability that, but for counselor's unprofessional errors, the results would have been different.
During the discovery process, Martin was represented by attorney Arch Boyd, II, from Memphis, TN, and Robert G. Gilder, a Southhaven, MS, attorney. Mr. Boyd filed a Motion for Discovery pursuant to Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice. Before trial commenced on November 29, 1989, John Henry was substituted as Martin's attorney. The trial court entered an order stating this fact and asserting that any requests for discovery were to be made on or before December 22, 1989, and that all discovery should be completed by February 1, 1990. The State had responded to the discovery motion on July 26, 1989. Enclosed in the discovery materials provided by the state was a copy of an envelope addressed to Robert Cole. The envelope, postmarked from Colt, Arkansas, on February 12, 1988, was introduced at trial as the State's exhibit number 7. The letter inside the envelope was admitted into evidence as State's exhibit number 8. The testimony disclosed that Martin's fingerprint was found inside the envelope.
Martin seems to complain that the state failed to photocopy the inside of the envelope, or that his trial lawyer failed to inspect it, or both. Regardless, the contention is without merit. There is no showing whatever that an inspection would have aided Martin, and it is clear that those items comprising exhibit 7 were fully disclosed to him.
Martin also asserts that Prewett was allowed to relate inadmissible hearsay remarks which were not objected to by John Henry. Martin acknowledges that *439 Miss.R.Evid.Rule 801(d)(2)(E), declaring statements made by a co-conspirator made during the course of and in furtherance of the conspiracy, are not hearsay. While admitting that Prewett could have been considered a co-conspirator, Martin argues, however, that she was not such past the point where she refused to kill Ray Robinson. According to Martin, this refusal ended any conspiracy to kill Robinson that might have existed between her and Sam (Martin).
Based on that premise, Martin suggests that Prewett's testimony that Cole took the phone and agreed to kill Robinson and relating Cole's later statements to her regarding his planning the murder and activities in that regard was inadmissible hearsay. Martin offers no further explanation nor any support for his contention. The contention is without merit.
First, Martin's focus upon Prewett's role as a conspirator is misplaced. The statements complained of are those attributed to Cole. The question then is not whether Prewett had withdrawn, but whether Cole's statements were made during the course of a conspiracy between himself and Martin and in furtherance of that conspiracy. Martin's ineffectiveness argument, based on the merits of an unmade objection based solely on the fact that Prewett had supposedly withdrawn, must fail. The person relating the statements need not be a conspirator. It is the status of the speaker which controls. Miss.R.Evid. Rule 801(d)(2)(E).
Another reason that this argument fails is that at the time of trial Prewett had pled guilty to the conspiracy. Despite the fact that her testimony differed from her plea admission, the trial court was entitled, on preliminary inquiry as to the admissibility of the testimony, to find that it was more probably true than not that Prewett was a conspirator, that Cole was a conspirator and that Cole's statements were in furtherance of the conspiracy. Miss.R.Evid.Rule 104(a); See, Bourjaily v. United States, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987); Graham, Federal Practice and Procedure, Interim Edition, Evidence, § 6725.
One letter from Martin after the shooting proposed a role for Prewett in a further attempt to kill Robinson. As the state correctly argues, Prewett's refusal to kill Robinson could be viewed simply as a refusal to pull the trigger, rather than a withdrawal from the overall plan. She took no steps to renounce the deposits allegedly made to her credit and did not report the plan to the authorities. A conclusion that she had not withdrawn is fully supportable. James v. State, 481 So.2d 805, 809 (Miss. 1985).
Clearly, the statements made by Cole, after his agreement to kill Robinson, were made during the period of the conspiracy, as he never withdrew and the objective of the conspiracy was never accomplished. The circumstances support a finding that it is more probable than not that Prewett remained a part of the conspiracy and statements made by Cole to her concerning the details of the plan would be deemed in furtherance of the conspiracy and therefore admissible. See, Mitchell v. State, 495 So.2d 5 (Miss. 1986).
Finally, the statements attributable to Cole were admissible for other reasons. Cole's statement that he would kill Robinson made to Martin over the phone was the formation of a conspiracy between Martin and Cole and admissible for the fact that it was said. Gayten v. State, 595 So.2d 409, 414 (Miss. 1992). His later statements concerning stalking Robinson and his plan to use the .22 to kill him were admissible as exceptions to the rule prohibiting hearsay pursuant to Rule 803(3) as statements showing an existing "intent, plan, motive, [and/or] design." Miss. R.Evid.Rule 803(3). His statement that he had shot Robinson was a statement against penal interest probably admissible pursuant to the provisions of Miss.R.Evid.Rule 804(a)(5) and 804(b)(3) because Cole, a fugitive, was unavailable. See, Mitchell v. State, 572 So.2d 865 (Miss. 1990); but, compare, Mitchell v. State, 495 So.2d at 11.
It follows that Martin can claim no ineffective assistance of counsel for his failure to object to statements which were admissible, *440 as those objections would not have been well taken.
Martin asks this Court to find that his lawyer was also ineffective in not requesting an instruction that the jury view Prewett's testimony with caution and suspicion. While it is true that, if requested, such an instruction would no doubt have been given, the failure to request the instruction does not rise to the level of ineffectiveness. The witness in question was a prostitute, living with a killer, who had pled guilty to the conspiracy for a suspended sentence. Surely, there was ample ammunition for impeaching her credibility without the instruction, and the transcript of the argument reflects that the ammunition was utilized.
The contention that Martin's assistance from counsel was constitutionally ineffective is without merit.

IV
Martin contends that the trial judge should have either sua sponte, or at the request of counsel, granted a circumstantial evidence instruction to the jury. Martin believes that the State failed to offer any direct evidence of his participation in a conspiracy to commit murder or aggravated assault. Martin states that his instruction D-1 was refused, as were all other instructions he presented which contained the circumstantial evidence charge. D-1 states:
If you find that the State has failed to prove any one or more of these elements beyond a reasonable doubt to the exclusion of every other reasonable hypothesis consistent with innocence, then you shall find the Defendant not guilty.
The law in this state is that a circumstantial evidence instruction need not be given in a case in which the State produces eyewitness testimony, or a confession of the offense charged. Stringfellow v. State, 595 So.2d 1320, 1322 (Miss. 1992); King v. State, 580 So.2d 1182, 1191 (Miss. 1991), quoting Gray v. State, 549 So.2d 1316, 1324 (Miss. 1989). Martin's argument is centered solely on his proposition that the evidence presented was strictly circumstantial. However, the facts show otherwise. Prewett was an eye (or at least, and sufficient for our purposes, an ear) witness to the formation of the conspiracy. Under our precedents no circumstantial evidence instruction was required.

Conclusion
For the foregoing reasons the judgment of the circuit court is affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., PRATHER, SULLIVAN, PITTMAN and McRAE, JJ., concur.
DAN M. LEE, P.J., concurs in result only.
ROBERTS, J., not participating.
NOTES
[1] These documents were later revealed to be fictitious.