754 So.2d 1289 (2000)
Jerry Anthony BOGAN, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01136-COA.
Court of Appeals of Mississippi.
January 25, 2000.
*1290 William F. Travis, Southaven, Attorney for Appellant.
Office of the Attorney General by W. Glenn Watts, Attorney for Appellee.
BEFORE KING, P.J., BRIDGES, AND MOORE, JJ.
KING, P.J., for the Court:
¶ 1. Jerry Bogan was convicted of robbery with a deadly weapon and depraved heart murder in the Desoto County Circuit Court. He was sentenced to serve a term of thirty years on the robbery charge and a consecutive term of life on the murder charge in the custody of the Mississippi Department of Corrections. Aggrieved by his convictions and sentences, Bogan has appealed and assigned three points of error: 1) whether the pre-trial identification procedures were so highly prejudicial that the in-court identification was tainted, 2) whether the circuit court erred in admitting hearsay statements under M.R.E. 403 and 803, and 3) whether the circuit court erred in allowing expert testimony that was confusing to the trier of fact.
¶ 2. Finding no error, this Court affirms.

FACTS
¶ 3. On the morning of June 16, 1997 at approximately 4:00 a.m., Michael Johnson informed his girlfriend, Renota Lewis, of his intent to pick "Jerry" up on his way to work. He promised to leave work and return the car by 9:00 a.m. for Lewis's *1291 scheduled doctor's appointment. However, Johnson never returned home. Johnson's sister, Michelle Johnson, notified Lewis that he had been shot in a robbery at Mrs. Winners restaurant. Johnson was taken to Baptist Desoto Hospital at 5:35 a.m. After efforts at resuscitation failed, Johnson was pronounced dead at approximately 7:21 a.m.
¶ 4. Kimberly Ward and Danielle Bain, the only eyewitnesses to the crimes, were working the early morning shift at Mrs. Winner's restaurant on June 16, 1997. Ward and Bain arrived together at about 4:45 a.m. for the 5:00 a.m. shift. Ward, as team leader, prepared the store for its patrons while Bain assisted her. Bain testified that Johnson, who worked as the breakfast cook until 10:30 a.m., reported to work soon after she and Ward arrived. The store had not opened for business when Johnson arrived, so Bain unlocked the door and let him in. Immediately behind Johnson, a man with a gun entered the store. While pointing the gun at Bain, the gunman asked if she was the manager. She said no and called Ward several times. Ward, who was working in the back of the store, walked to the front where Bain was. The gunman, later identified as Anthony Bogan, demanded money, and Ward complied. Bogan then directed Johnson to tie both women with tape and lay them on the floor. Bogan repeatedly asked if Johnson recognized him as a former high school classmate. Johnson never responded. Ward and Bain testified that Bogan fired at Johnson at least twice, took his car keys, and fled the scene.
¶ 5. Immediately after Bogan fled, Ward called the police. The police arrived within minutes and proceeded with an investigation of the crime scene. Sergeant Frank Smith investigated the crime scene and found three shell casings from a .38 caliber weapon lying on a counter, a strip of tape, a red cap and shirt on the floor. On the tape used to restrain Johnson and the women, police found carpet fibers consistent with carpet fibers from Bogan's van. No other physical evidence was recovered from the crime scene. During the trial, Charles Peters, an expert in the field of comparative bullet lead analysis, testified that the bullet retrieved from the victim and one of the bullets found inside the victim's car were produced from the same batch of lead and were manufactured within days of each other.
¶ 6. Sergeant Billy Lantrip interviewed the witnesses on the day of the incident. When interviewed, Bain described the gunman as a tall black male with a heavy build. Ward's description was consistent with Bain's description. However, Ward described the gunman as skinny with short hair. At trial, both women indicated that the gunman wore dirty clothes, dark shades, a baseball cap, and a red bandanna around his neck. On cross, Ward denied having described the gunman as skinny, but admitted to saying that he had short hair. In an attempt to prove that Bogan was not the perpetrator, defense counsel called Rebecca Maguire, Bogan's mother. Mrs. Maguire testified on direct that Bogan had suffered from alopecia totalis since the age of nine, which prevented him from growing facial hair.
¶ 7. Because the gunman identified himself as a former classmate of the victim, both women had viewed pictures from Johnson's Whitehaven High School annual. They identified Kevin Fleming as someone who looked similar to the gunman. However, Kevin Fleming was not positively identified as the gunman. Police investigated Fleming and excluded him as a possible suspect.
¶ 8. On June 17, 1997, Ward and Bain provided a description of the gunman for a composite computer sketch. This computer sketch was distributed by police to the media. Subsequent to the distribution of the computer sketch, Ward and Bain positively identified Bogan as the gunman in a June 18th photo line-up. Both women also identified Bogan in a physical line-up conducted on June 30, 1997. The defense argued that the identification procedures *1292 for both line-ups was suggestive. Ward and Bain had viewed the photos separately and observed the suspects individually at the physical line-up in the presence of police officers.
¶ 9. Bogan was charged with robbery with a deadly weapon and with the depraved heart murder of Michael Johnson. Bogan offered the alibi that he was at home in bed asleep with his wife when the shooting took place. Rebecca Bogan, Bogan's wife, and Michael Irving, his brother-in-law, corroborated this alibi. Despite his alibi, the jury convicted Bogan of the charges. He was sentenced to serve thirty years on the robbery charge, and a consecutive term of life on the murder charge. Bogan's motion for judgment notwithstanding the verdict or, in the alternative, a new trial having been denied, he now appeals his convictions and sentences.

ANALYSIS AND DISCUSSION OF THE LAW

I

Whether the pre-trial identification procedures were so highly suggestive that the in-court identification was tainted.
¶ 10. In his first assignment of error, Bogan contends that the pretrial identification procedures were suggestive, which caused a substantial likelihood of irreparable misidentification at the in-court identification. Simmons v. United States, 390 U.S. 377, 383, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Ward and Bain identified Bogan in open court as the gunman who robbed Mrs. Winners and killed Johnson. Bogan contends on appeal that the in-court identification was tainted by impropriety present in Ward and Bain's prior identification of Bogan from the photo and physical line-ups. According to Bogan, the photo and physical line-ups were highly suggestive since he was the only individual who appeared in both line-ups. Bogan also charges that these procedures focused on him while deflecting attention from other similar looking suspects such as Kevin Fleming.
¶ 11. Bogan asserts that the in-court identification failed the totality of circumstances test set out in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Under this test, the Court evaluates an in-court identification based on the following factors: "(1)[t]he opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation." Id. at 199-200, 93 S.Ct. 375. Bogan argues that the witnesses did not have sufficient opportunity to identify him at the crime scene since they were ordered to lie on the floor. Additionally, Bogan emphasizes the inconsistencies present in Ward and Bain's description and pretrial identification. Bogan also states that the length of time between the crime and the pretrial identification was too remote.
¶ 12. Because he did not object to the in-court identification, Bogan's argument fails. The Mississippi Supreme court has held that a failure to object is fatal for purposes of preserving error. Fleming v. State, 604 So.2d 280, 302 (Miss. 1992). See Smith v. State, 530 So.2d 155, 161-62 (Miss.1988); Williams v. State, 512 So.2d 666, 672 (Miss.1987); Johnson v. State, 477 So.2d 196, 214 (Miss.1985); Singleton v. State, 518 So.2d 653, 655 (Miss. 1988); Crawford v. State, 515 So.2d 936, 938 (Miss.1987); Tubbs v. State, 402 So.2d 830, 835 (Miss.1981). Accordingly, Bogan has waived his objection to Ward and Bain's in-court identification. Having failed to object to the in-court identification, Bogan is barred from raising this issue for the first time on appeal.
¶ 13. This assignment of error is without merit.

*1293 II

Whether the circuit court erred in admitting the hearsay statements under M.R.E. 803 and 403.
¶ 14. In his second assignment of error, Bogan contends that Johnson's statement to his girlfriend was erroneously admitted by the trial court pursuant to M.R.E. 803(3). Bogan argues that the rule was not designed to allow this type of statement. We disagree and find that the rule was specifically designed for this type of statement. The present state of mind exception clearly states that "[a] statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) ... [is not excluded by the hearsay rule]." M.R.E. 803(3). The statement was correctly admitted as proof of Johnson's plan or intent to pick "Jerry" up that particular morning. Statements which indicate an intent or plan to do something in the future are admissible to prove that the proposed act occurred. Hall v. Hall, 199 Miss. 478, 24 So.2d 347, 350 (1946); see Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 297, 12 S.Ct. 909, 36 L.Ed. 706 (1892); see also Terrovona v. Kincheloe, 852 F.2d 424, 427 (9th Cir.1988) (stating that an out-of-court statement by the victim to his girlfriend that he was leaving to meet the defendant was admissible because it was a statement of the declarant's then present intent and because it placed the defendant at the murder scene); U.S. v. Houlihan, 871 F.Supp. 1495, 1500 (D.Mass.1994); U.S. v. Pheaster, 544 F.2d 353, 376 (9th Cir.1976). However, Bogan, as a third party, urges that Johnson's statement to Lewis is not admissible under M.R.E. 803(3) to prove his actions on the morning of the robbery and murder. The language of Rule 803(3) says that statements of intent are admissible. By its terms, the rule does not limit the class of person's statements of intent may be admitted against.
¶ 15. Bogan argues that the circuit court erred by relying upon Martin v. State, 609 So.2d 435 (Miss.1992), when it admitted Johnson's statement to Lewis. See Parker v. State, 606 So.2d 1132, 1139 (Miss.1992). Bogan argues that the statements in Martin were made by conspirators as they planned and executed a murder scheme. The State correctly points out that the conspirator's statement involved a plan to stalk and kill the intended victim. The court found the statements "[a]dmissible as exceptions to the rule prohibiting hearsay pursuant to Rule 803(3) as statements showing an existing intent, plan, motive [and/or] design." Martin, 609 So.2d at 439. In a similar instance, the Mississippi Supreme Court allowed a victim's statement of intent to ask a boyfriend to leave the home out of fear for her life. Sherrell v. State, 622 So.2d 1233, 1236 (Miss.1993). The statement was introduced in response to the defendant's contention that the victim gave him gifts of personal items to pawn. The court reasoned that the victim's statement was relevant and admissible as a state of mind exception under M.R.E. 803(3). Id. at 1237.
¶ 16. Additionally, Bogan asserts that the circuit court erred in admitting the statement under M.R.E. 403. Bogan argues that the statement was unfairly prejudicial because it implied a possible conspiracy with the victim and placed him at the scene of the crime. The trial court is granted broad discretion in balancing the interests of M.R.E. 403. Foster v. State, 508 So.2d 1111, 1117 (Miss.1987) (citing Brumley Estate v. Iowa Beef Processors, Inc., 704 F.2d 1351 (5th Cir.1983); U.S. v. Chalan, 812 F.2d 1302 (10th Cir. 1987)). "When the court determines that a 403 factor substantially outweighs probative value, it is still within its discretion to determine whether to exclude the evidence, since 403 states ... that it may be excluded." Id. Here, the girlfriend's testimony shows that Johnson intended to pick up Bogan on the morning of the robbery and murder. This act is an issue in the *1294 case as it places Bogan at the murder scene. In allowing the statement, the trial court determined that its probative value was not outweighed by the danger of unfair prejudice. The trial court's ruling will not be reversed on appeal absent an abuse of discretion. Id. at 1119. (citing Brumley Estate v. Iowa Beef Processors, Inc., 704 F.2d 1351 (5th Cir.1983); Shearer v. State, 423 So.2d 824 (Miss.1982)). The statement was properly admitted.

III

Whether the circuit court erred in allowing expert testimony that was confusing to the trier of fact?
¶ 17. In his last assignment of error, Bogan contends that the expert testimony offered by the prosecution did not aid the trier of fact in understanding the evidence. Bogan argues that the testimony confused the jury and generated speculation. Charles Peters, qualified as an expert in the field of comparative bullet lead analysis without objection from the defense, testified that the bullet retrieved from the victim and one of the bullets found inside the victim's car were produced from the same batch of lead and manufactured within days of each other.
¶ 18. The supreme court has held that expert evidence will only be admitted when the trial judge can affirmatively answer the following questions: "1) Is the field of expertise one in which it has been scientifically established that due investigation and study in conformity with techniques and practices generally accepted within the field will produce a valid opinion?; 2) Will the proposed testimony assist the trier of fact?" Hosford v. State, 560 So.2d 163, 168 (Miss.1990). Since the qualifying questions were answered affirmatively, the trial judge correctly allowed the expert testimony. During the trial, the defense never objected to Peters' credentials as an expert or to the substance of his testimony.
¶ 19. Bogan did not object to the expert testimony during trial nor was it included as grounds in his motion for a new trial or judgement notwithstanding the verdict. If Bogan considered this testimony confusing or imprecise, he was obligated to object. Typically, if a defendant fails to timely object to an issue at trial, the issue is waived for purposes of appeal. Cavett v. State, 717 So.2d 722 (¶ 21) (Miss. 1998); Hall v. State, 691 So.2d 415, 418 (Miss.1997); McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). The trial court will not be held in error on a matter that was never presented for its consideration. Chase v. State, 645 So.2d 829, 846 (Miss. 1994); Parker v. Mississippi Game and Fish Com'n, 555 So.2d 725, 730 (Miss. 1989). Having failed to object to the expert testimony, Bogan is procedurally barred from raising this issue on appeal.
¶ 20. THE JUDGMENT OF THE DESOTO COUNTY CIRCUIT COURT OF CONVICTIONS OF ROBBERY WITH A DEADLY WEAPON AND DEPRAVED HEART MURDER AND SENTENCES OF THIRTY YEARS AND LIFE IMPRISONMENT, TO BE SERVED CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS ARE AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO DESOTO COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.