622 So.2d 1233 (1993)
Thomas Franklin SHERRELL
v.
STATE of Mississippi.
No. 90-KA-564.
Supreme Court of Mississippi.
August 5, 1993.
*1234 David A. Stephenson, Meridian, for appellant.
Michael C. Moore, Atty. Gen. and Mary Margaret Bowers, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, C.J., and PITTMAN and ROBERTS, JJ.
PITTMAN, Justice, for the Court:

I.
Thomas Franklin Sherrell was indicted, tried and convicted in the Circuit Court of Lauderdale County for capital murder and was sentenced to life imprisonment without parole as an habitual offender. Sherrell appeals to this Court and assigns six errors for discussion. The jury verdict is supported *1235 by substantial evidence and we find no reversible error and affirm.

II.
Bobbie Jean Boone's body was found late Wednesday night, August 17, 1988, at her mobile home located in the Zero community of Lauderdale County. She was lying on her back with arms and legs outstretched and tied to the bed. She was gagged with a knotted piece of sheet placed in her mouth. Her body had begun to decompose. Following an autopsy, the pathologist concluded she had been dead between 12 and 36 hours. Cranial trauma caused by a severe beating with a blunt instrument was given as the cause of death. An ax handle, stained with the victim's blood, was placed into evidence as the murder weapon. Bobbie was last seen at work on Monday, August 15th. That day she received a telephone call from a man. Following the conversation, she was visibly upset. The victim told fellow employee, Kellie McDonald, the caller was Tom Sherrell, a man she met while visiting her son at Parchman. Bobbie stated that she did not want to have anything to do with him and feared Sherrell was going to give her trouble.
The next day a man called Bobbie's boss and told him Bobbie was taking her mother to see a doctor and would not be in that day but would be at work Wednesday. On Wednesday, when Bobbie failed to report for work and they could not contact her by telephone, Kellie and her husband, Ollie McDonald, left work at 11:00 p.m. and drove to her home. They found the front door open and no lights on in the trailer. Fearing foul play, they called the sheriff. Deputy Sheriff Pinson arrived, entered the home and found the victim's body.
Bobbie and Sherrell were last seen together on Saturday or Sunday, August 13th or 14th. Sherrell was arrested on Thursday, August 18th, at the Bonita Lounge. He frequented the lounge operated by Betty Davis and was there drinking beer on Monday the 15th, Tuesday the 16th, and Wednesday the 17th. Betty Davis had purchased a ring from Sherrell for $100. The ring belonged to the victim. Davis refused to buy the victim's t.v. and stereo that had been brought by Sherrell to the bar.
Sherrell was questioned on four different occasions following his execution of Miranda waivers, however, he refused to give a signed or tape-recorded statement. During questioning, he confirmed that he had been living with Bobbie for two weeks preceding her death. He was not employed and passed the day while Bobbie was at work drinking beer at the Bonita Lounge. He claimed he slept in his car parked outside the victim's home the Saturday night before her death. He last saw her Sunday morning when she brought him a cup of coffee. Monday he got drunk, became disoriented and drove mistakenly to Alabama. He admitted attempting to pawn the victim's personal property which he claims were gifts from her. Sherrell elected not to testify in his own defense. However, the trial record reflects the following evidence:
Sherrell confessed killing his paramour to a fellow inmate; the victim's statement to a friend that she was having trouble with a man living with her and feared he would kill her; Sherrell's fingerprints were located on the headboard of the victim's bed just two feet above her head and also throughout the victim's home; after her death, Sherrell sold her ring and attempted to sell other items of her personal property; and the victim's house coat was found in Sherrell's car.
As State witnesses, the victim's mother denied Bobbie had taken her to the doctor on the Tuesday that she missed work. The victim's daughter identified the ring purchased by Betty Davis as her mother's ring.

III.

Did the trial court err in allowing Robin Reynolds to testify concerning a "jail-house" confession allegedly made to him by Thomas Sherrell?

Sherrell claims that testimony of his alleged jail-house confession should not *1236 have been allowed and that its introduction unduly prejudiced him. At trial, Robin Reynolds testified that Sherrell admitted killing Boone because she [Boone] refused to return money orders that Sherrell had asked her to safeguard.
We have warned against accepting the word of a "jail-house snitch" at face value. In McNeal v. State, 551 So.2d 151 (Miss. 1989), we stated:
The testimony of jail-house informants, or "snitches," is becoming an increasing problem in this state, as well as throughout the American criminal justice system. The present case is one of many across the nation where the truthfulness of the informant has been called into question. Informants are offering evidence against their fellow inmates in exchange for reduced sentences.
Id. at 158.
Although the trial judge allowed the testimony of Reynolds into evidence, he made certain that a cautionary instruction was given to the jury. The jury was informed of Reynolds's criminal background, and that he was presently serving a five year sentence without the possibility of parole. The jury was instructed to view his testimony with caution and suspicion in light of this criminal conviction. The judge also reminded the jurors that they should consider the rest of the physical evidence presented during the trial and not judge the case based on the alleged confession. No evidence was presented which showed that Reynolds would benefit in any way for testifying against Sherrell. In fact, Reynolds was moved to another cell for fear that Sherrell would hurt him in retaliation for his testifying. Since the properly instructed jury heard Reynolds's testimony and was in the best position to evaluate his credibility, this Court should defer to the jury's determination. See Kelly v. State, 553 So.2d 517, 522 (Miss. 1989).
Finally, Sherrell claims that this January 4, 1990, alleged confession could not have occurred because he was being housed in a different area than Reynolds at that time. Apparently Reynolds and Sherrell began sharing a cell sometime in late January. Marie Chapman, an assistant jail administrator, testified that according to her records and recollection, on January 4, 1990, Reynolds was housed in the north side of the jail, while Sherrell was in isolation in a fifth floor cell. However, Chapman did concede that jail records are often vague, and do not always tell where a prisoner is being housed on a given day. Chapman further noted that even if Reynolds and Sherrell were in different cells on that date, prisoners housed in the same cell block floor could easily talk to Sherrell through the bars of his cell.
The first issue is without merit.

IV.

Did the court err in permitting Buddy Brock to testify that Bobbie Boone was afraid of Thomas Sherrell, and that Buddy Brock should tell the police that Thomas Sherrell killed her if anything happened to Bobbie Boone?

Buddy Brock, a long time friend of Bobbie Boone, talked with the victim three days before her death when she stopped by his store. At this time, Boone stated that she had a disagreement with a fellow who had been living with her and feared that if she forced him out, he might kill her. Brock's testimony regarding Boone's statement is inadmissible as an attempt to show her state of mind prior to her death. See Miss.R.Evid. 803(3), comment; see also Shephard v. U.S., 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933) (wife's statement to third party concerning her suspicions that her husband was poisoning her held inadmissible). Nor does Boone's statement qualify as a dying declaration under Miss.R.Evid. 804(b)(2). For a statement of impending death to be a hearsay exception, the declarant must (1) die after making the statement; (2) realize that he or she is mortally wounded; and (3) relinquish any hope of recovery. Watts v. State, 492 So.2d 1281 (Miss. 1986).
However, part of Brock's testimony concerning Boone's state of mind is both relevant and admissible. The state of mind *1237 hearsay exception found in Miss.R.Evid. 803(3) states
(3) Then Existing Mental, Emotional, or Physical Condition.
A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.
Boone's statement to Brock that she intended to ask Sherrell to leave is admissible under Miss.R.Evid. 803(3) because it responds to Sherrell's contention that Boone gave him things to pawn. Boone was frightened for her life by the person whom she was sharing a trailer. Although she was scared to return with Sherrell there, she was just as scared to ask him to leave. Therefore, Brock's testimony as to Boone's state of mind was both relevant and admissible under Miss.R.Evid. 803(3).

V.

Did the court err in permitting a ring allegedly owned by Bobbie Boone to be placed in evidence?

Next, Sherrell contends that the lower court erred when it allowed introduction of Boone's ring into evidence. He specifically claims that the ring in question was not identified by Betty Gail Davis as being the one she bought from Sherrell. However, Sherrell failed to cite any supporting authority. We have repeatedly held that if the assignments of error are not supported by authority, this Court is not required to consider them. Clark v. State, 503 So.2d 277, 280 (Miss. 1987).
Although we do not have to address this assignment of error, we feel that the seriousness of the charge warrants some discussion. At trial, Peggy Pace, the victim's daughter, unequivocally identified the ring as her mother's and it was allowed into evidence. Sherrell objected on the grounds of the lack of chain of custody, but was overruled. Chief Deputy Mike Vick testified that Sherrell told him that Boone had given him several items to pawn so that he could get enough money to return to the Coast. One of these items was a diamond ring that Sherrell sold to Davis.
Dearmon, a worker at the Bonita Lounge, testified that he was present when Sherrell was trying to sell the ring to Davis, because Davis asked the worker if he thought the ring was worth $100. Before Davis purchased the ring for $100, she demanded that Sherrell get it appraised. Sherrell came back with documentation appraising the diamond ring at $695. After purchasing the ring, Davis contacted Constable Gerald Crocker and told him that she thought the ring might be Boone's. Davis gave Constable Crocker the diamond ring and told him that Sherrell had sold it to her. Crocker, in turn, gave the ring to Chief Deputy Vick.
The introduction of the ring is admissible under Rule 401 because it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Miss.R.Evid. 401. If the evidence has any probative value at all, the rule favors admission. See Comment, Miss.R.Evid. 401. In Coleman v. State, 545 So.2d 3 (Miss. 1989), we stated:
Physical objects which are relevant and for which the chain of custody is not broken or which are otherwise identified with certainty are admissible in evidence. (Citation omitted). Matters regarding the chain of custody of evidence are largely within the discretion of the trial court, and absent an abuse of discretion, this Court will not reverse.
545 So.2d at 5, (quoting Evans v. State, 499 So.2d 781, 783 (Miss. 1986)). The ring represents a highly relevant, as well as critical, piece of physical evidence linking Sherrell to the crime. Therefore, the trial judge properly admitted the ring into evidence.

VI.

Did the court err in failing to grant a mistrial because of comments made by the court to the venire prior to the impaneling of the jury?

Sherrell claims that he was prejudiced by the trial judge's pre-trial remarks *1238 to the venire. Apparently, the judge addressed the venire of sixty telling them that only one in five persons would receive the "bad news" of being selected on the jury. These statements were made in an attempt to put the potential jurors at ease since they often become nervous before the jury is selected. Granted, the judge's remarks would have been better left unsaid, but they are not so prejudicial so as to warrant reversal. However, the judge did stress the seriousness and importance of serving as a juror, adding that jury service can be one of the most rewarding and interesting experiences of one's life. See Cunningham v. State, 357 So.2d 299 (Miss. 1978); Barlow v. State, 272 So.2d 639 (Miss. 1973). This issue is without merit.

VII.

Was the evidence presented sufficient to support a conviction of capital murder or murder?

Sherrell claims that the verdict was against the overwhelming weight of the evidence, pointing to the circumstantial nature of the evidence presented. In circumstantial situations, the jury must find the accused guilty beyond a reasonable doubt and "to the exclusion of every reasonable hypothesis other than guilt." Stringfellow v. State, 595 So.2d 1320, 1322 (Miss. 1992). Circumstantial evidence is entitled to the same weight and effect as direct evidence and this Court has upheld convictions based solely on circumstantial evidence. Guilbeau v. State, 502 So.2d 639, 641 (Miss. 1987). The trial judge granted a circumstantial evidence instruction, but the jury still felt that the prosecution's evidence was strong enough to support a conviction.
The verdict was not against the overwhelming weight of the evidence. Ron Smith, an investigator from the Mississippi Crime Lab, testified that Sherrell's fingerprints were found all in Boone's residence, finding some on the front door knob as well as above the headboard of the bed where Boone's body was found. Deborah Haller, also of the Mississippi Crime Lab, testified that the "O" blood type found on the ax handle and bed sheet matched that of the victim Boone. Dr. Steven Hayne concluded that the cause of Boone's death was trauma to the head, caused from some sort of blunt instrument. However, this instrument could not be identified.
There was testimony by Peggy Pace, the victim's daughter, identifying the ring which Sherrell sold to Davis as her mother's. Otis and Kellie McDonald, co-workers of the victim, testified that Sherrell had called Boone on Monday at work, upsetting her. Buddy Brock, a long time friend of Boone's, testified that she was fearful that the person staying with her was going to hurt her and if something happened to her to call the sheriff. Robin Reynolds, an inmate who shared a cell with Sherrell, testified that Sherrell confessed his killing Boone to him. Although Reynolds's credibility might be questionable, the jury was warned to value his testimony with caution. Finally, various electronic equipment of Boone's was found in Sherrell's possession at the time he was questioned. All of this evidence combined is in accord with the jury's findings. Therefore, like the other assignments of error, this assignment is without merit.

VIII.

Did the combination of all of the above, together with other miscellaneous errors made by the lower court, deny the defendant his right to a fair and impartial trial, and further deprive him of his rights of due process according to the Constitutions of the United States of America and the State of Mississippi?

Although Sherrell listed this assignment of error in his statement of issues, he failed to supply any argument or cite any authority in support of this contention. Therefore, we will not address this issue. Clark v. State, 503 So.2d 277, 280 (Miss. 1987).
Since all of Sherrell's assignments of error are found to be without merit, we hereby affirm his conviction of capital murder and sentence to life imprisonment without parole as an habitual offender.
*1239 CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT AS AN HABITUAL OFFENDER IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT POSSIBILITY OF PROBATION OR PAROLE, AFFIRMED.
HAWKINS, C.J., PRATHER, P.J., and McRAE, ROBERTS and SMITH, JJ., concur.
BANKS, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN, J.
BANKS, Justice, dissenting:
I am compelled to dissent because the court erred in admitting the testimony that Boone thought that Sherrell would kill her. As the majority correctly notes, this is not the kind of testimony permitted under Miss.R.Evid. 803(3). It is precisely the type of testimony deemed inadmissible in Shepard v. United States, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933) cited in the Comment in explanation of our Rule 803(3). Miss.R.Evid. 803(3), Comment. Inexplicably, the majority sanctions this testimony by referring to a part of Boone's statement that was admissible. That is, her statement that she intended to ask Sherrell to leave which has some relation to the veracity of Sherrell's statement that she gave him some things to pawn. Boone's statement that she intended to ask Sherrell to leave is admissible and supplies a motive for Sherrell's action. It does not follow, however, that her statement concerning her beliefs and fears is admissible. This is a statement of "belief to prove the fact ... believed" explicitly inadmissible under our rules of evidence. Miss.R.Evid. 803(3).
DAN M. LEE, P.J., and SULLIVAN, J., join this dissent.