[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 374 
¶ 1. Corwin T. Hill appeals his conviction by a DeSoto County Circuit Court jury of both possession and sale of a controlled substance. Hill assigns the following errors:
 I. WHETHER THE EVIDENCE SEIZED AS A PRODUCT OF AN UNLAWFUL SEARCH AND SEIZURE IN CONTRAVENTION OF THE LAW SHOULD BE SUPPRESSED AS FRUIT OF AN ILLEGAL SEARCH AND SEIZURE.
 II. WHETHER THE COURT ERRED IN REFUSING TO GRANT THE DEFENDANT'S INSTRUCTION WHICH RELATED TO BIAS, INTEREST IN OUTCOME AND SPECIFIC INSTANCES OF MISCONDUCT WHICH RELATE DIRECTLY TO THE TRUTH AND VERACITY OF THE WITNESS WHEREIN THERE IS EVIDENCE OF AN EXCESSIVELY LOWERED SENTENCE GIVEN TO THE CONFIDENTIAL INFORMANT AND THE EVIDENCE OF BIAS BY THE POLICE OFFICER.
 III. WHETHER THE COURT IMPROPERLY DENIED THE MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
 IV. WHETHER THE ELICITED OUT-OF-COURT STATEMENTS BY THE STATE OF UNKNOWN DECLARANTS IN THE FACE OF OBJECTION BASED UPON HEARSAY CONSTITUTES REVERSIBLE ERROR.
 V. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO COMPEL DISCLOSURE OF THE CONFIDENTIAL INFORMANT.
 VI. WHETHER THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE CONVICTION PURSUANT TO THE INDICTMENT AND RELEVANT LAW, SUCH THAT THE LOWER COURT ERRED IN NOT GRANTING A DIRECTED VERDICT PURSUANT TO THE MISSISSIPPI RULES OF PROCEDURE.
 VII. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PERMITTING THE PROSECUTION TO ELICIT TESTIMONY OF A SEPARATE AND DISTINCT CRIME, DEPRIVING THE APPELLANT OF DUE PROCESS UNDER THE FEDERAL AND STATE CONSTITUTION AND DENYING HILL A FUNDAMENTALLY FAIR TRIAL.
 VIII.WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION FOR NEW TRIAL.
¶ 2. Finding no merit to any of these alleged errors, we affirm the conviction.
 FACTS
¶ 3. At some unspecified time, the DeSoto County Metro Narcotics Department began receiving complaints that Corwin Hill was selling drugs on the public roadways surrounding the home of his father and, some small distance away, his mother's home. These tips came primarily from neighbors of the Hills and other community members. Some tips came via telephone, primarily anonymous but on at *Page 376 
least one occasion, a neighbor personally complained at the DeSoto County Metro Narcotics Station.
¶ 4. These reports indicated Hill would park his red 1988 Nissan Sentra on the shoulder of various roads in his neighborhood and sell drugs from the vehicle. Authorities were also informed that Hill had been known to carry a gun during these transactions. Based upon these pieces of information, the narcotics agents began investigating Hill, which included intermittent surveillance. At least one undercover purchase of marijuana was arranged in conjunction with the Mississippi Bureau of Narcotics, but the MBN later declined to pursue the scheduled purchase.
¶ 5. On February 1, 2001, Agent Charles Terry of Metro Narcotics passed Hill parked on the shoulder of the public road in his red Nissan. Because this was consistent with the information of Hill's alleged method of operation, Agent Terry turned his vehicle around, pulled up behind Hill and activated the blue police lights of his unmarked vehicle. Hill then drove forward on the shoulder and turned into a private driveway, apparently that of his father, before stopping.
¶ 6. Agent Terry approached Hill and requested Hill exit the vehicle so the agent could pat Hill down for weapons. During the course of the pat-down, Hill suddenly lunged back into the vehicle and reached under the driver's side seat. Fearing Hill was reaching for a weapon, Agent Terry first ordered Hill out of the car then, when Hill refused to comply, physically removed Hill, placed him face down on the ground and handcuffed him. Agent Terry then searched the car for weapons. During the search, Agent Terry noted a white powdery substance on the driver's seat. Agent Terry performed a field test which confirmed the presence of cocaine and Hill was arrested for possession of a controlled substance. Hill bonded out of jail later the same day.
¶ 7. The following evening, February 2, confidential informant Steven Dettelbach called Hill and arranged to purchase cocaine from him. Dettlebach was equipped with both audio and video recording devices. Dettlebach met Hill on the side of a public road. Hill was a passenger in a car driven by another man. Dettlebach purchased the cocaine from Hill then returned to the Metro Narcotics agents and turned over the drugs and recording equipment.
¶ 8. Hill was later arrested and indicted for sale of a controlled substance as well as the possession charge. After trial, Hill was convicted on both charges. He now appeals that judgment.
 ANALYSIS 1. Illegal search and seizure
¶ 9. In his first assignment of error, Hill argues the collection of cocaine from the front seat of his car on February 1, 2001, by Agent Terry was an illegal search and seizure in violation of his constitutional rights. Hill contends that Agent Terry did not have probable cause "to search and investigate the items in his vehicle without a proper search warrant or an arrest" and no valid exceptions to the warrant requirement exist to render the search and seizure of evidence proper. The evidence, therefore, should have been suppressed. The trial court conducted a suppression hearing and found the evidence admissible.
¶ 10. The Fourth Amendment to the Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to *Page 377 
be searched, and the persons or things to be seized.
U.S. Const., amend. IV.
¶ 11. A police officer may, however, approach an individual for purposes of investigating possible criminal behavior, even in the absence of probable cause to arrest. Terry v. Ohio, 392 U.S. 1, 22 (1968). Where the officer has a reasonable belief the individual may be armed and dangerous, the officer may conduct a very limited search of the outer clothing in order to determine whether the individual is, in fact, armed. Id. at 30.
¶ 12. Hill makes much of the fact that Agent Terry had neither warrant nor probable cause when he approached Hill on the side of the road. Agent Terry admitted as much at trial. However, neither warrant nor probable cause is required for an investigatory inquiry. What is required is a reasonable belief based upon specific, articulable facts that the defendant is engaged, or about to be, in criminal activity. Id. at 21-22.
¶ 13. Given the information available to Agent Terry, his decision to stop and investigate was reasonable. Hill was parked on the side of the road, in a particular car and in a specific neighborhood, all of which was consistent with the tips Terry had received of Hill's method of selling drugs. Nor was there any immediately apparent reason for Hill's presence there or his decision to pull away from Terry once the agent had activated his blue lights. This was all suspicious behavior which, while not rising to a level sufficient to justify an immediate arrest, was sufficient to permit inquiry of Hill about his activities.
¶ 14. These same tips led Agent Terry to believe Hill was possibly carrying a concealed weapon. It is not necessary that the officer know with certainty that a suspect is armed before the limited Terry search is permissible. Id. at 27. If the reasonably prudent man would be warranted in believing his safety or the safety of others is at risk under the circumstances, he may take the allowable steps to assure his personal safety. Id. Having been specifically told Hill often carried a gun, Agent Terry's belief that a pat-down was necessary was reasonable.
¶ 15. It is this same concern for safety that permits an officer to make a cursory search of the passenger compartment of a vehicle upon a valid Terry inquiry without warrant or probable cause. Michigan v. Long,463 U.S. 1032, 1049 (1983). If the initial inquiry was valid and the officer is able to articulate specific facts to support his belief the object of the inquiry may be armed, the officer may search those passenger areas of the vehicle where a weapon may be concealed. Id. As the Supreme Court pointed out, if a subject is dangerous, he is no less dangerous simply because he has not yet been arrested. Id. at 1050. Moreover, if the individual is not arrested and allowed to return to his vehicle, an undiscovered weapon may yet still compromise officer safety.Id. at 1052.
¶ 16. An officer is not required to ignore contraband discovered in the course of a Terry search although such was not the point-nor could it have validly been-of his search in the first place. Id. at 1050. When such chance discovery is made, evidence thus discovered does not require suppression. Id.
¶ 17. Agent Terry did not discover the cocaine by exceeding the scope of the permissible search of Hill's car. He did not discover it by prying into objects *Page 378 
which could not have reasonably held a weapon, such as a matchbox or small flat envelope. Agent Terry discovered it dusted on the seat of the car. We agree with the trial court that the evidence was properly seized and its admission at trial was not error.
 2. Jury instructions
¶ 18. Hill next contends he was prejudiced by the trial court's refusal to grant his proffered instruction, D-2. Hill argues the instruction was a proper one addressing the possible bias, prejudice or lack of veracity of a witness. The court refused the instruction as it was in improper form and offered Hill's counsel a brief recess in order to find a substitute instruction. Counsel did not offer any substitute. On appeal, Hill argues that Steven Dettlebach's testimony was unreliable and a cautionary instruction should have been given because Dettlebach had been arrested himself on drug sale charges and received lenient treatment at the hands of authorities in exchange for his participation as a confidential informant. Hill also alleges bias against him by law enforcement.
¶ 19. The instruction at issue, D-2, reads:
 The Court instructs the jury that evidence that a witness or witnesses
 (a) is prejudiced against the defendant and/or
 (b) has an interest in the outcome of the case; and or
 (c) has engaged in specific instances of misconduct which relate directly to the truth and veracity of the witness may be used for the limited and sole purpose of ascertaining the credibility of the witness.
¶ 20. A cautionary instruction is one in which the jury is advised that the testimony of certain witnesses should be viewed with suspicion because of the probability of unreliability of the witness.[1] Such instructions may be given when the State relies upon the testimony of a co-conspirator or accomplice. Montgomery v. State, 830 So.2d 1269, 1272 (¶ 9) (Miss.Ct.App. 2002). The testimony of jailhouse snitches, repeating statements allegedly made by the defendant while incarcerated together, may also warrant a cautionary instructions. Carr v. State,655 So.2d 824, 837 (Miss. 1995). This is so because of the obvious potential for abuse; one facing criminal charges may lie in order to better one's own position with authorities.
¶ 21. As an initial matter, we agree with the trial court that the instruction was improper for the stated purpose for which it was being offered. It bears little resemblance to a cautionary instruction. It does not instruct that the jury should view certain testimony with suspicion but rather requires the jury to severely limit its use of testimony byanyone who may conceivably have an interest in the outcome of the trial. That is not the proper use of a cautionary instruction.
¶ 22. We also note that the trial court did not refuse to give any cautionary instruction, merely the proffered one. Hill was granted an opportunity, albeit a relatively brief one, in which to locate an adequate substitute. This he failed to do. We cannot find the court erred because of Hill's own failings.
¶ 23. Under this assignment of error, Hill further argues that because a *Page 379 
confidential informant who receives favorable treatment in exchange for services and testimony is equally as motivated to lie as an accomplice or co-conspirator would be, Dettlebach should be regarded as either an accomplice or co-conspirator and therefore the failure to give any cautionary instruction is reversible error.
¶ 24. Hill acknowledges this Court has previously addressed that very question and declined to make the finding he urges. Montgomery, 830 So.2d at 1272. Hill argues the question should be revisited because there is little, if any, distinction between confidential informants and accomplices who testify to save their own skin.
¶ 25. An accomplice is an individual involved in some manner in the commission of a crime. Id. In undercover drug buys, the confidential informant is acting as an agent of the State. He cannot commit a crime by doing exactly what he was sent by authorities to do.
¶ 26. We do agree that an informant may be motivated to lie. The same may be said for virtually any witness at a criminal trial. Hill had, and ably utilized, the opportunity to cross-examine Dettlebach and expose to the jury the possibility of prevarication for self-preservation purposes. On cross, Dettlebach admitted that he had acted as a confidential informant following his own arrest on narcotics charges in hopes of helping himself and that he had received what would likely be considered a more lenient sentence in comparison to the punishment he could have received.
¶ 27. The jury had all of this information before it. It is the duty of the jury to judge the credibility of the witnesses presented and determine the weight and worth to be given that testimony. Davis v.State, 320 So.2d 789, 791 (Miss. 1975). They were informed of this duty by the court in instruction C-1. This was adequate.
 3. Sufficiency of the evidence
¶ 28. Hill made motions for directed verdict and judgment notwithstanding the verdict which were denied by the trial court. Such motions challenge the sufficiency of evidence presented at trial. McClainv. State, 625 So.2d 774, 778 (Miss. 1993).
¶ 29. In testing an allegation of insufficient evidence, we look at the evidence in the light most favorable to the State and the reasonable inferences to be drawn from that evidence. Id. We will reverse only where, with respect to one or more elements of the crime charged, no reasonable and fair-minded jury could have found the defendant guilty.Wetz v. State, 503 So.2d 803, 808 (Miss. 1987).
¶ 30. On appeal, Hill argues Dettlebach's testimony was deficient because, as an accomplice, it required corroboration and was seriously and substantially impeached at trial by defense witness Kenneth Robinson who testified that Dettlebach had confessed to buying the drugs from a Memphis man then simply telling the narcotics agents he had purchased them from Hill; the audiotape made by narcotics agents of the buy was incomprehensible and the videotape did not show the appellant; Agent Terry's in-court statement that he recognized the voice of Corwin Hill at the time of the buy was not sufficient to uphold the conviction; and the failure to immediately arrest Hill at the time of the taped drug sale casts doubt upon the narcotics agents' testimony that Hill was considered a major drug dealer in the area.
¶ 31. As discussed above, Dettlebach was not an accomplice and the rules on accomplice testimony do not apply to *Page 380 
this case. As to the remaining claims of Hill on this issue, Hill would ask that we review the sufficiency of the evidence by looking to any weaknesses in the State's case, rather than its strength which is the accepted standard of review. What the State did supply evidence of was cocaine in Hill's car, resulting in the arrest and conviction for possession of a controlled substance, and the taped sale of cocaine by Hill to Dettlebach. Whatever technical deficiencies may have existed in the tapes were presented to the jury along with the testimony of Dettlebach and Terry.
¶ 32. The same may be said for the testimony of Robinson. Robinson, also a convicted felon serving his sentence at the time of Hill's trial, provided testimony which was contradicted by Dettlebach and the tapes made of the sale in question. The question of which evidence was more believable was properly left to the jury and we will not intrude upon its finding of facts by re-evaluating the credibility of the witnesses in the face of conflicting evidence. Groseclose v. State, 440 So.2d 297, 300-301 (Miss. 1983). The evidence that was submitted was more than sufficient to sustain the conviction.
 4. Disclosure of informants' identity
¶ 33. Hill next argues he was prejudiced by the court's permittal of testimony by law enforcement as to the substance of the tips by community members that Hill was dealing drugs in the neighborhood. Hill objected to this testimony and argues on appeal an infringement of his constitutional right to confront and cross-examine his accusers.
¶ 34. At trial, Hill questioned Agent Terry regarding the identity of the informants to which the State objected and was sustained. Hill contends this also violated his right of confrontation as well as constituted a discovery violation for the State's failure to disclose these persons to the defense.
¶ 35. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. M.R.E. 801(c). Such statements are not admissible except as provided for by law. M.R.E. 802.
¶ 36. In this case, Agent Terry was explaining why he had approached Corwin Hill at all on February 1, 2001, the date of the arrest for possession of a controlled substance. Agent Terry was not offering this information for its truth-that Hill was selling drugs-but as the background basis for his own actions that day. Such does not constitute inadmissible hearsay. To the extent necessary to show why an officer acted as he did, an informant's tip is admissible. Swindle v. State,502 So.2d 652, 657-58 (Miss. 1987).
¶ 37. Allowing such statements to reach the jury does not violate Hill's right to confront his accusers. "The central concern of the [Constitutional] Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before a trier of fact." Maryland v. Craig, 497 U.S. 836, 845 (1990). The evidence used to accuse Hill was not the various statements of anonymous tipsters but the evidence acquired by Agent Terry which resulted in Hill's arrest. Agent Terry, for all practical purposes of this issue, was the accuser and Agent Terry was confronted and cross-examined by Hill at trial.
¶ 38. Nor was Hill prejudiced by the court's refusal of Hill's demand that the tipsters' identities be revealed. The State is not always required to divulge the identity of a confidential informant. Read *Page 381 v. State, 430 So.2d 832, 835 (Miss. 1983). While disclosure is required when the informant was a material witness to the crime, under other circumstances disclosure is a matter of discretion left to the trial court. Id. at 835-36.
¶ 39. It is readily apparent that none of the undisclosed informants were material witnesses to the crimes with which Hill was charged. Therefore, disclosure was subject to the court's discretion. In this case, the transcript shows the court expressed serious concern for the safety of those involved with the arrest and prosecution of Corwin Hill. A police officer who would have testified against Hill was attacked and injured in front of his home the night before he was scheduled to testify. Under these circumstances, we do not find an abuse of judicial discretion.
¶ 40. We also note, as a practical matter, that with one apparent exception, the identity of the informants were unknown to authorities. The State would not have been able to satisfy Hill's request even had it been so inclined.
¶ 41. Steven Dettlebach was the only informant who, as a participant in the undercover buy, was a material witness and whose identity was required to be disclosed. The State complied with this obligation; Dettlebach was called as a witness and Hill thoroughly cross-examined him. There is no suggestion the State failed to provide proper discovery with respect to Dettlebach.
 5. Evidence of a separate crime
¶ 42. Finally, Hill argues the court improperly allowed evidence of a separate and unrelated crime to be introduced to the jury. During the testimony of Agent Terry, the narcotics officer revealed that Metro Narcotics in conjunction with the Mississippi Bureau of Narcotics had planned a large marijuana buy from Hill in the past but, because the MBN declined to go forward, the plan was abandoned.
¶ 43. Hill failed to object to this testimony at the time it was offered. By failing to make a contemporaneous objection, Hill's claim of error is barred from appellate review. Walker v. State, 671 So.2d 581, 587 (Miss. 1995).
¶ 44. Procedural bar notwithstanding, Hill's complaint is without merit. The testimony indicates a plan by authorities left unrealized. No crime occurred, separate and unrelated or otherwise. Hill was never questioned, detained, arrested or charged as a result of the MBN's abandoned idea. Therefore any alleged error on this ground is groundless.
¶ 45. As a final matter, we must address an issue not raised by either party. We review this under the provisions of Rule 103(d) of the Mississippi Rules of Evidence, also referred to as the plain error rule.
¶ 46. In the second count of the indictment, Hill was sentenced to a term of fifteen years' imprisonment to eventually be followed by fifteen years of post-release supervision. By statute, the maximum amount of time a defendant may be placed under post-release supervision is five years. Miss. Code Ann. § 47-7-34 (Rev. 2000). Although Hill could have received up to five years of post-release supervision for each crime of which he was convicted, the trial court saw fit to only impose such restrictions for one of the convictions. The imposition of a fifteen-year term is in clear violation of statute and we must reverse and remand to the trial court for the sole purpose of entering a correct order with respect to the post-release supervision portion of the sentence. Burnettv. *Page 382 State, 831 So.2d 1216, 1221 (¶¶ 20-21)(Miss.Ct.App. 2002).
¶ 47. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY OFCONVICTION ON COUNT I POSSESSION OF A CONTROLLED SUBSTANCE AND SENTENCEOF THREE YEARS, FINE OF $5,000 AND RESTITUTION OF $125, COUNT II SALE OFA CONTROLLED SUBSTANCE AND SENTENCE OF FIFTEEN YEARS FINE OF $5,000 ANDRESTITUTION OF $275, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OFCORRECTIONS; SENTENCES TO RUN CONCURRENTLY, IS AFFIRMED. SENTENCE OFFIFTEEN YEARS POST-RELEASE SUPERVISION IS REVERSED AND REMANDED FOR ENTRYOF PROPER SENTENCING ORDER. COSTS OF THIS APPEAL ARE ASSESSED TO DESOTOCOUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, LEE, IRVING, MYERS, CHANDLERAND GRIFFIS, JJ., CONCUR. KING, P.J., CONCURS IN RESULT ONLY.
[1] An example of such an instruction would be, "I charge you that Jay Posey, Willie James Sherrod and Tommy Turner have admitted being accomplices to this burglary. You are to regard this testimony with great suspicion and to consider it with caution." Derden v. State, 522, So.2d 752, 754 (Miss. 1988).