LEE, C.J., for the Court:
¶ 1. A jury in the Claiborne County Circuit Court found Dexter Watson guilty of murder. Watson was sentenced to serve life in the custody of the Mississippi Department of Corrections. Watson filed post-trial motions, which the trial court denied. Watson now appeals, asserting that the trial court erred in denying his *271 motion for a new trial. Watson also reserves his right to raise any ineffeetive-assistance-of-eounsel claims in a post-eon-viction-relief claim.
FACTS
¶ 2. On Sunday, March 6, 2011, Patricia Dotson’s body was found behind the First Baptist Church in Port Gibson, Mississippi. Dotson was beaten and stabbed to death. At the time of Dotson’s death, she and Watson had been living in a car together. Dotson was a prostitute, and Watson was a self-described “hustler.” Both were involved with drugs.
¶ 3. Freddie Yarbrough, chief deputy of the Claiborne County Sheriffs Department, interviewed Watson the day Dotson’s body was found.[1] ■ Watson told Deputy Yarbrough he had last seen Dotson the previous Wednesday. Deputy Yarbrough noticed stains on Watson’s tennis shoes and scratches on both of his arms. Watson told Deputy Yarbrough the scratches and blood were from walking through the woods. Watson told Deputy Yarbrough those tennis shoes were the only pair of shoes he owned.
¶ 4. Deputy Yarbrough spoke with Watson the next day. Watson again stated that he had not seen Dotson. The blood on Watson’s shoes was tested and found to belong to Dotson.
¶ 5. Dr. Mark Levon, a forensic pathologist, conducted the autopsy on Dotson. Dr. Levon concluded that Dotson died of multiple blunt- and sharp-force injuries, including a stab wound that severed her jugular vein. Dr. Levon opined that the superficial injuries on Dotson’s right hand could be either defensive or offensive wounds, but the injury on her palm was consistent with a defensive wound.
¶ 6. Cecilia Kazery, an investigator with the Mississippi Bureau of Investigation, interviewed Watson. Watson first told Investigator Kazery that he had not seen Dotson in several days. Watson later told Investigator Kazery that two men named “Cool” and “Little Will” murdered Dotson. Investigator Kazery testified she was unable to locate these two men. Investigator Kazery interviewed Watson several days later. Watson told Investigator Kazery that Dotson was killed at John Duvall’s house. Watson stated that Duvall, John Robinson, and Travis Turner were inside the house with Dotson. Watson was sitting outside and heard arguing inside. Watson entered the house and saw Dotson on the floor in a pool of blood. Watson told Investigator Kazery that Dotson was still alive. Watson, Duvall, and Turner put Dotson in the back of Turner’s car and dumped her body behind the church. Watson said he stayed with Dotson for a few minutes and wiped blood off her face with his blue t-shirt, which he later threw into an abandoned building near the church. Watson also covered Dotson’s private parts.
¶ 7. Investigator Kazery testified that she found Watson’s blue t-shirt in the abandoned building and noted that Dotson’s private parts were covered but was unable to corroborate any other facts from Watson’s story. No blood or evidence of any cleanup was found in Duvall’s house or in Turner’s car. Robinson’s car was also tested for the presence of blood, but none was found.
¶ 8. During trial, Watson testified that he was with Dotson, Cool, and Little Will near the church. Watson said Dotson and Little Will went behind the church. Cool told Watson, “You better not open your *272 mouth.” Watson said he went behind the church and found Dotson bleeding and gasping for air. Dotson told Watson, “Baby, I love you” and then died.
DISCUSSION
I. MOTION FOR A NEW TRIAL
¶9. Watson contends the trial court erred in denying his motion for a new trial. Specifically, Watson challenges the weight of the evidence. This Court will not disturb a jury’s verdict unless it “is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). Additionally, an appellate court must view the evidence in the light most favorable to the verdict. Knight v. State, 72 So.3d 1056, 1065 (¶ 34) (Miss.2011). It is well-settled law that the jury determines the credibility of the witnesses and resolves conflicts in the evidence. Davis v. State, 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App.2003).
¶ 10. Watson argues the State failed to produce any direct evidence that tied him to Dotson’s murder. Although Watson told several versions of how Dotson died, he admitted during trial that he was with her when she died. Also, the blood on Watson’s shoes was determined to be from Dotson. Circumstantial evidence is evidence that, “without going directly to prove the existence of a fact, gives rise to a logical inference that such [a] fact does exist.” Mclnnis v. State, 61 So.3d 872, 875 (¶ 11) (Miss.2011) (citation omitted). It is entitled to the same weight and effect as direct evidence. Sherrell v. State, 622 So.2d 1233, 1238 (Miss.1993). From the evidence presented including— Watson’s statements to law enforcement, his admission that he was there when Dotson died, and Dotson’s blood on his shoes — we cannot find that to allow the verdict to stand would sanction an unconscionable injustice. The jury clearly resolved any conflicts in the evidence in the State’s favor. This issue is without merit.
II. INEFFECTIVE ASSISTANCE OF COUNSEL
¶ 11. In his other issue, Watson simply reserves the right to raise any matters dealing with ineffective assistance of counsel in a post-conviction-relief claim. We agree that ineffective-assistance-of-counsel claims are best reserved for a petition for post-conviction relief.
¶ 12. THE JUDGMENT OF THE CLAIBORNE COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLAIBORNE COUNTY.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.

. Unless otherwise noted, Watson was read his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), each time he was questioned.